## Trexler Estate

*Harold A. Butz*, for accountants.

COYNE, P. J., October 20, 1965.— ... These accounts, which have been combined for purposes of audit, disclose a balance of net income from both personalty and realty in the amount of $610,094.04, of which $578,266.95 represents net income from personalty and $31,827.09 net income from realty. These accounts have been examined and audited and found to be in order. The net balances have been verified and, accordingly, the accounts will be confirmed as presented.

The accountants have presented a statement of proposed distribution, in which they suggest that one fourth of $610,094.04, or $152,523.51, be returned to the trustees and added to the corpus of the trust, and that a like portion and amount be awarded to the City of Allentown to be used by the latter "for the improvements, extension and maintenance of all of its Parks". These proposals are consonant with the provisions of subparagraphs A and B of the eleventh paragraph of testator's will and will be approved as presented.

With respect to the remaining one half of the net income, or $305,047.02, the accountants have submitted a lengthy list of organizations to which they have already paid, or propose to pay, varying amounts of money totaling $305,047.02. As to those distributions made during administration and prior to the filing of this account, which total $119,110.03, the trustees request approval of the court. The trustees further request the court to award the remaining $185,936.99 in such amounts and to such distributees as are set forth in the statement of proposed distribution. For reasons which will become apparent by reference to the discussion to follow, the court has sought and received the able and willing cooperation and assistance of the Attorney General of the Commonwealth of Pennsylvania, in his capacity as parens patriae, with reference to certain problems involving the distribution of this one half of the net income. In the absence of any spe-

cific objection to the current statement of proposed distribution, and with the concurrence of the Attorney General, the court proposes to approve the statement of proposed distribution as presented, as well as those distributions made during administration and prior to the filing of the account, subject to correction of the proper names of certain of the distributees. In so doing, however, the court wishes it clearly understood that such action is not to be construed as an unqualified approval of the distributees mentioned in the current statement of proposed distribution for purposes of future distributions. As to all future distributions, it will be necessary that the court be reasonably satisfied that each recipient meets the conditions set forth in testator's will. And this brings us to a discussion of certain inherent problems relating to distribution which have been too long neglected. While ordinarily this court refuses to grant advisory opinions, we believe that, in this instance, the interests of the court, the interests of the trustees and the interests of the community at large will be better served if the court takes this opportunity to lay down certain general guidelines and suggestions with respect to future distributions from this trust estate pursuant to subparagraph C of the eleventh paragraph of testator's will.

In subparagraph C of the eleventh paragraph of his will, testator provided that "The remaining one-half of said income shall be used and distributed annually and perpetually, by my Trustees, for such charitable organizations and objects as in their discretion shall be of the most benefit to humanity, limiting them, however, as to locality, to the City of Allentown and the County of Lehigh, and to the following objects and organizations, to wit:

"First: Hospitals, churches, institutions for the care of cripples and orphans, young men and young women's Christian Association, Boy Scouts and any other

worthy organizations which have for their object, and which truly serve for the benefit of mankind.

"Second: Education and training of worthy and earnest young men, who are residents of Pennsylvania, for the Christian ministry, at Muhlenberg College, Allentown, Pennsylvania, and at Franklin and Marshall College at Lancaster, Pennsylvania".

We wish to point out at the commencement of this discussion that the "Second" subparagraph above creates no problems at all for the trustees or the court. The language of that subparagraph is clear and self sufficient, and neither adds to nor detracts from the problems hereinafter discussed. Accordingly, we have dismissed it from our consideration. Unfortunately, however, the remaining language of subparagraph C of paragraph eleven of testator's will, which was executed on April 15, 1929, leaves much to be desired as to its meaning and testator's intent. And despite the fact, that due to the untimely death of testator in the fall of 1933, this trust has been in existence for 32 years, there has never been, to the knowledge of this court, any formal effort to interpret this language of his will. Perhaps this may have been due, in part, to the fact that at the inception of this trust, the meaning of the will and its application to existing circumstances were relatively simple. Certainly, at the time of testator's death the number and nature of the charitable organizations in existence in the City of Allentown and the County of Lehigh was, in comparison with the number and nature of those existing today, considerably limited. Moreover, the complexion of the city and the county was quite provincial and unsohpisticated, and the operation of those charitable organizations and objects then in being was comparatively uncomplicated. However, with the passage of time, and particularly since the end of World War II, the scene has altered substantially. This area, of which the City

of Allentown and the County of Lehigh are but a part, has experienced a tremendous growth population-wise, economically and socially. Today, the city and the county are but a part of a large metropolitan area. Today, the number and nature of organizations and objects claiming charitable status has increased many fold. Today, charitable endeavors have progressed into fields which were unknown at the time of his death. Thoughtful and knowledgeable persons in all segments of community life and activity have long since refused to be bound by arbitrary political boundaries. Their planning and efforts have been directed toward providing broader and more efficient services to this huge metropolitan area, rather than toward a particular segment thereof. This has been particularly true of many of our charitable organizations and endeavors, and has been reflected in an increasing number of mergers and consolidations of organizations which formerly serviced Lehigh and Northampton counties separately. In fact, one merger has gone so far as to combine groups which formerly serviced Berks, Lehigh and Northampton Counties and parts of Bucks, Carbon and Montgomery Counties in Pennsylvania, as well as a substantial portion of western New Jersey. As a result of such changes, it is no longer a simple matter to interpret and to apply literally the language of testator's will. That language must now be examined in an effort to determine testator's true intent in light of existing circumstances. Moreover, the court has observed a need for placing in proper perspective the functions of the trustees and the court as they relate to matters of distribution. Accordingly, we undertake this advisory opinion in an effort to dispel confusion and to clarify misunderstandings which may exist relative to the construction and application of this portion of testator's will.

First of all, we think it appropriate to define gen-

erally the areas of responsibility which devolve upon the trustees and the court in this situation. It is undisputed that the orphans' court has exclusive jurisdiction of the distribution of real and personal property of testamentary trusts, whether created before or after the effective date, January 1, 1952, of the Orphans' Court Act of August 10, 1951, P. L. 1163, except in the case of a testamentary trust created before the effective date of the Fiduciaries Act of June 7, 1917, P. L. 447, jurisdiction of which has already been acquired by another Pennsylvania court: Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 301(2), as amended, 20 PS §2080.301. This grant of jurisdiction necessarily vests in the orphans' court the power to distribute, and concurrently imposes upon that court the duty and responsibility to direct distribution. Furthermore, the orphans' court has been granted specifically all other legal and equitable powers required for, or incidental to, or in addition to, the powers expressly enumerated: Orphans Court Act of August 10, 1951, P. L. 1163, sec. 304, 20 PS §2080.304; Way Estate, 379 Pa. 421, 109 A. 2d 164 (1954). It has been said many times and in many ways, but it is clear beyond argument, that the orphans' court has ample authority to ascertain the amount of a decedent's or settlor's property and to order its distribution among those entitled thereto. The power to distribute inherently includes the power to inquire into and to determine all questions necessary to a proper distribution of the fund, including the ascertainment of the persons to whom distribution must be made. See Way Estate, supra, and cases cited therein. Most important, however, at least for purposes of this discussion, is the fact that the orphans' court not only possesses the powers hereinbefore described, but is duty-bound to exercise them: Way Estate, supra, pages 428, 432; McGettrick's Appeal, 98 Pa. 9, 12.

But what of the trustees to whom testator has given the power to distribute one half of this income "for such charitable organizations and objects *as in their discretion* shall be of the most benefit to humanity"? Where do they fit into the picture, if the orphans' court is going to take charge of the subject of distributing this income? The answer is quite simple. In the first place, testator has said that one half of the income shall go to charitable organizations and objects. Secondly, he has said that those charitable organizations and objects must be located in the City of Allentown or the County of Lehigh. And, finally, he has said that such charitable organizations and objects shall include "Hospitals, churches, institutions for the care of cripples and orphans, young men and young women's Christian Association, Boy Scouts and any other worthy organizations which have for their object, and which truly serve for the benefit of mankind". In short, testator has imposed certain restrictions upon the distribution of this portion of the trust income. Each distributee must be an organization or use which satisfies those conditions expressed in testator's will. Now, then, laying aside for the moment any questions of interpretation of these limitations, we say that the trustees have complete discretion to select, as distributees of this portion of the income of the trust, any organization or object which satisfies the conditions aforementioned. Once the trustees have selected an organization or use which satisfies those conditions, the orphans' court has no right whatsoever to question the action of the trustees. However, it is the responsibility, and indeed the duty, of the orphans' court to see to it that in the selection of objects of their largesse, the trustees have, in fact, selected organizations and uses which satisfy the conditions laid down in testator's will.

While the court knows, from its own knowledge and

experience, that many of the organizations and objects listed in the distribution schedule presently qualify as distributees within the language of the will without further inquiry, there are still other organizations and objects about which the court is unknowledgeable. To determine whether or not such organizations and objects qualify properly as distributees within the language of testator's will requires the production of some facts upon which to base a decision one way or the other. In such cases, we feel that it is the responsibility of the trustees to supply the court with sufficient evidence to substantiate, to the satisfaction of the court, any distribution or proposed distribution to such an organization or object. As a practical matter, this approach should entail a preliminary inquiry by the trustees before any funds are distributed or proposed to be distributed. Such an inquiry is not sufficient if it is based simply upon the fact that an organization is chartered as a nonprofit corporation and holds an exemption certificate from the Internal Revenue Service pursuant to section 501 of the Internal Revenue Code of August 16, 1954, 26 U. S. C. A. §501. In the first place, a nonprofit corporation charter, per se, indicates nothing one way or the other as to whether an organization is or is not a charitable organization. Many such corporations have no basis whatsoever for claiming status as a charitable organization. The same thing holds true with respect to organizations holding a tax exemption certificate from the Internal Revenue Service. Moreover, a determination by the Internal Revenue Service is in no way binding on this court for the purpose of establishing whether or not under the law of Pennsylvania an organization shall be classified as charitable. In fact, the probative value of such a certificate is very little or nil. On the other hand, such an inquiry, to be effective for our purposes, should involve, first, an examination into the chartered pur-

poses of the organization and a decision as to whether or not on that basis the organization qualifies as a charitable distributee, and, secondly, an investigation into its actual operations to ascertain whether the chartered purposes are being carried out and whether or not it is, in fact, operating as a charitable organization. This latter will entail, at the very least, an examination of the organization's operating statement. At the same time inquiry is made as to the charitable status of the organization, inquiry can also be made as to whether or not the organization falls into the category or categories of organizations favored by testator, of which we shall say more later. Moreover, this type of inquiry may very well turn out to be a continuing process, for the operations of these organizations change from year to year through expansion of services, alteration of services, mergers, consolidations, and so on. Consequently, an organization which qualifies this year may not qualify next year, or vice versa. We suggest, therefore, that as a minimum requirement, every request for funds addressed to the trustees be accompanied by a current copy of the chartered purposes of the organization presenting the request, together with a current financial statement disclosing all sources of income and the nature of all expenditures. With these tools in hand, the trustees will then be in a position to make a sound decision, or, at worst, to pursue any further inquiry which may be dictated by the circumstances. In addition, they will also be prepared to furnish the court with the facts necessary to enable the court to make its decision. In cases involving substantial doubt as to the qualifications of a particular organization, we suggest that distributions be deferred until the audit of an annual account, at which time the facts can be presented to the court and the latter can then decide the matter, or that in the case of very pressing circumstances, the trustees petition the court for

instructions, after which the court, following a hearing on the petition, will enter an appropriate direction.

Turning to the will itself, we are well aware of the fact that several problems of interpretation beset the trustees and the court. As we noted above, there are certain conditions which every recipient of funds from this trust must satisfy. First, it must be a charitable organization or use. The determination of this question must be made under the applicable law of Pennsylvania. We have already referred to some of the mechanics to be employed in arriving at an answer to this question, and, in view of the body of law existing in this state on that subject, we anticipate that neither the trustees nor the court will have any difficulty in reaching a proper decision in the vast majority of situations.

The second condition involves the language "limiting them, however, as to locality, to the City of Allentown and the County of Lehigh". What did testator intend when he employed those words? Or, to put it another way, what criteria are to be employed to determine whether or not an organization or use which qualifies as a charity is located in the city or county aforementioned? A literal interpretation and application of this language may well lead to the conclusion that in order to satisfy this condition, a charity must simply have its headquarters located in the city or the county. Such a condition could, however, lead to the ridiculous situation where a charity located its headquarters within the approved geographical areas, yet furnished all or a very substantial portion of its services outside those areas. We are certain that testator never intended such a result. We are convinced that his primary objective was to benefit the people in these communities. Consequently, we conclude that when testator placed this geographical limitation upon the distribution of trust income, he intended that the trustees select those charitable organizations and objects

which were physically located in the city and county and which were rendering services exclusively, or substantially so, to the people residing therein. Moreover, we do not think that he intended that gifts to local agencies or objects should, through direct or indirect means, be dispersed or diffused to the point where a very substantial portion of the benefits derived from such gifts should redound to the benefit of persons other than those residing in Allentown and Lehigh County. At first blush, this conclusion may appear to impose severe practical burdens upon the trustees and the court, involving, for example, extensive inquiries into the operations of proposed distributees, particularly where a large part of their operations extend beyond the boundaries of Lehigh County. Upon closer examination, however, we do not believe this to be necessarily true. We think such matters can be resolved rather easily by comparing the income received from sources within and without Lehigh County with the cost of services rendered within and without the county, or by noting the amount of monies sent out of the county. Such information is readily obtainable. To the extent that the Lehigh County area is being called upon to pay substantially more than its fair share of the overall cost of operations, or to the extent that comparatively large sums are diverted by local agencies to parent State and national organizations, then to such extents there would appear to be unwarranted uses of funds from this trust. Obviously, situations with varying degrees of difficulty will be encountered, but the trustees can always reject a request for funds without fear of transgressing the provisions of the will, or in doubtful cases can seek the assistance of the court either at an audit of an annual account or by petition, as hereinbefore mentioned, before making distribution. Each case, of course, must, in the final analysis, rest upon its own particular facts.

Finally, we take up the question created by the manner in which testator has described the objects of his bounty. In the first breath, he directs distribution of income to "such charitable organizations and objects" as in the discretion of the trustees *"shall be of the most benefit to humanity"*. This, of course, is a very broad and general description, and by itself affords no problem. Then he goes on to say "limiting them, however, as to locality, to the City of Allentown and the County of Lehigh and to the following objects and organizations, to wit: First: Hospitals, churches, institutions for the care of cripples and orphans, young men and young women's Christian Association, Boy Scouts and any other worthy organizations which have for their object, and which truly serve for the benefit of mankind". Here, then, testator has enumerated specifically the types of charities to be benefited, but has followed that with another general description.

In all cases involving the interpretation of testamentary documents, the basic rule of law requires that effect shall be given to testator's intent as that intent can be ascertained from the entire instrument. A careful examination of testator's will and codicil reveals that no assistance can be gained from the other portions of those documents. In short, the meaning of subparagraph C of the eleventh paragraph of the will must be ascertained solely from a consideration of the language therein contained. If that language is not clear, we may then seek the aid of principles and rules of construction for the purpose of arriving at certain inferences of fact which, in turn, will assist us in ascertaining and giving effect to the intention of testator. In the case at hand, we shall necessarily consider the doctrine of ejusdem generis and certain of its aspects.

In the first place, it seems to us that it makes little difference whether we construe the words "limiting them" to restrict the initial gift to "such charitable

organizations and objects" as in the trustees' discretion "shall be of the most benefit to humanity" to "the following objects and organizations" thereafter enumerated, or construe those words as applying only to the phrase "as to locality, to the City of Allentown and the County of Lehigh". In the first instance, we obviously have a limitation on the initial broad description of beneficiaries. In the second instance, the words would read as follows: "to such charitable organizations and objects" as in the discretion of the trustees "shall be of the most benefit to humanity" *and* to "the following objects and organizations" thereafter enumerated. The prima facie inference to be drawn from the latter language is that the general language is limited by the particular enumeration. Consequently, we arrive at the conclusion in the second instance that the words "and to the following objects and organizations, to wit", constitute a limitation upon the initial designation of beneficiaries, even though construed apart from the words "limiting them". In other words, we are of the opinion that testator intended that the income in question should be distributed by his trustees to such charitable organizations and objects as in their discretion might produce the most benefit to humanity, provided the distributees be located in the city and county aforementioned and provided they fall within the language of subparagraph "First".

This brings us to a second problem, the construction of the language of subparagraph "First" of subparagraph C of the eleventh paragraph. This language reads as follows: "First: Hospitals, churches, institutions for the care of cripples and orphans, young men and young women's Christian Association, Boy Scouts and any other worthy organizations which have for their object, and which truly serve for the benefit of mankind". The question here is whether the last clause, "and any other worthy organizations which have for

their object and which truly serve for the benefit of mankind", includes only charitable organizations and objects of the same general character as those enumerated or whether that language expresses an intent to provide coverage over and beyond the specific organizations and objects enumerated.

The doctrine of ejusdem generis holds that where general words follow specific words in an enumeration describing the legal object, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. The doctrine is an attempt to reconcile an incompatibility between specific and general words in light of certain other rules of construction, namely, that all words in a will are to be given effect if possible; that parts of a will are to be construed as a whole; and that testator is presumed not to have used superfluous words. If the general words are given their full and natural meaning, they would include the objects specifically designated, thereby rendering the enumeration superfluous. If, on the other hand, the specific words are given their full and natural meaning, the general words become redundant in part. The doctrine or rule, therefore, accomplishes the purpose of giving effect to both the particular and general words by treating the particular words as indicative of a class, or classes of objects, and the general words as extending testator's language to everything embraced in the class or classes, though not specifically enumerated by the particular words. The resolution of this conflict by ascribing to the specific words their natural meaning and by restricting the meaning of the general words to things similar in nature to the enumerated class or classes is justified, on the ground that had testator intended the general words to be used in their unrestricted sense, he would have made no mention of the particular class or classes, but would have employed one all-inclusive expression.

The doctrine or rule applies when the following conditions exist: (1) The will contains an enumeration by specific words; (2) the members of the enumeration constitute a class; (3) the class is not exhausted by the enumeration; (4) a general term follows the enumeration; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the rule requires. However, where the enumeration is exhaustive, or where the members of the enumeration, although specific, are diverse in character, the inference that testator attached to the general term a restricted meaning, ejusdem generis with preceding specific terms, does not arise. In such cases, the general term remains unaffected by its association with the preceding specific words, because the latter furnish no criterion by which to restrict the general words.

Reviewing testator's language, we observe a rather confused situation. The terms "hospitals", "churches" and "institutions for the care of cripples and orphans" would, in themselves, seem to be both exhaustive of their respective classes as well as diverse in nature. The other two specific enumerations, "young men and young women's Christian Association" and "Boy Scouts", would appear to refer to three particular organizations, YMCA, YWCA and Boy Scouts, rather than to any specific class, and while they bear some similarity unto each other, they possess no similarity to the preceding three enumerations. Moreover, the designation of three particular organizations by name is exhaustive in itself. Under the circumstances, we must conclude that the rule of ejusdem generis has no application in this case, and that the general language following the specific enumerations is not limited by the latter. With respect to the specific words, we regard these simply as supplemental to the initial general description for the purpose of providing examples

or additional descriptions of the objects of testator's benevolence and, in particular, for the purpose of indicating testator's preferences without necessarily restricting his broad generosity. Accordingly, we are of the opinion that the trustees may, within their discretion, select as distributees of the trust income any organization or object, provided it be, in fact, charitable in nature and provided the funds so distributed are devoted exclusively, or substantially so, for the benefit of the people in the City of Allentown and the County of Lehigh.

We are aware that the implementation of the advice and suggestions contained herein cannot be accomplished overnight. Many of the distributees listed in the statement of proposed distribution are perennials. Over the years, they have come to expect and depend upon an annual allocation from the trustees in order to defray a portion of their current operating expenses. At this very moment, many of them are on the eve of budget examinations by the United Fund as a prerequisite to a determination of their allocations for 1966 from the United Fund. In these budgets are reflected anticipated receipts from the trustees during 1966. In light of these facts, the fact that the next accounting period of the trustees will close on March 31, 1966, and the fact that the account for that period will probably be before the court for audit sometime in August 1966, we propose that the trustees proceed to implement this opinion at the quickest pace consonant with reason and the practical aspects of each situation, provided that by the time the 1967 account is before the court for audit, facts and information concerning all distributees and proposed distributees will be available to show, if required, that each of them meets the conditions laid down in testator's will.

The City of Allentown has had notice of the filing of this account and audit thereof, as appears by written

acknowledgment thereof attached hereto and made a part hereof. In addition, due notice was given to the Attorney General of the Commonwealth of Pennsylvania, as evidenced by an affidavit of service of notice which has been filed with the court.

No objections have been filed to the account or to the statement of proposed distribution as prepared and presented . . .

It is further ordered and decreed that, within 60 days after December 31, 1965, the City of Allentown prepare a statement of the manner in which the funds herewith distributed to the city have been expended by it and file a copy of said statement with the trustees, a copy with the Attorney General of the Commonwealth of Pennsylvania and a copy with the court, and shall file forthwith with the clerk of this court proof of the filing of the copies of said statement upon the trustees and the Attorney General as aforesaid.

This decree shall become final, unless exceptions thereto are filed within 20 days after service as aforesaid.